**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| El Paso Natural Gas Company LLC,<br><br>Plaintiff,<br><br>v.<br><br>United States of America, et al.,<br><br>Defendants. | No. CV-14-08165-PCT-DGC<br><br>**ORDER** |

Plaintiff El Paso Natural Gas Company brought suit under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") against Defendants United States of America, United States Department of the Interior, United States Bureau of Indian Affairs, United States Geological Survey, United States Department of Energy, and United States Nuclear Regulatory Commission (collectively, "United States"). Doc. 55. Plaintiff has filed a motion for partial summary judgment. Doc. 114. The motion is fully briefed (Docs. 114, 119, 123), and the Court heard oral argument on June 1, 2017. For reasons that follow, the Court rejects the United States' sovereign immunity defense and will require additional briefing on the question of its CERCLA owner liability.

**I.  Background.**

Plaintiff brings claims under §§ 107 and 113 of CERCLA to recover response costs incurred in remediating 19 historical uranium mines located on the Navajo

reservation (the "Mine Sites"). Doc. 55, ¶¶ 1-2. The parties stipulate that the United States has owned fee title to the Navajo reservation, in trust for the benefit of the Navajo Nation, since at least 1952, including the subsurface minerals. Doc. 83, ¶¶ 23-24.

## II. Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III. Analysis.

"CERCLA is a strict liability statute in that it does not require a party to act culpably in order to be liable for clean up." *Voggenthaler v. Maryland Square LLC*, 724 F.3d 1050, 1061 (9th Cir. 2013). CERCLA's provisions should be interpreted "liberally to effectuate the statute's two primary goals: '(1) to ensure the prompt and effective cleanup of waste disposal sites, and (2) to assure that parties responsible for hazardous substances bear the cost of remedying the conditions they created.'" *City of Los Angeles v. San Pedro Boat Works*, 635 F.3d 440, 447 (9th Cir. 2011) (quoting *Carson Harbor Village, Ltd. v. Unocal Corp.,* 270 F.3d 863, 880 (9th Cir.2001)) (alterations incorporated).

To establish a prima facie claim for recovery of response costs under CERCLA, a private-party plaintiff must show:

> (1) the site on which the hazardous substances are contained is a "facility" under CERCLA's definition of that term, Section 101(9), 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" of any "hazardous

substance" from the facility has occurred, 42 U.S.C. § 9607(a)(4); (3) such "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan," 42 U.S.C. §§ 9607(a)(4) and (a)(4)(B); and (4) the defendant is within one of four classes of persons subject to the liability provisions of Section 107(a).

*City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1002-03 (9th Cir. 2010) (quoting *Carson Harbor Village*, 270 F.3d at 870-71). The parties stipulate that the first three requirements are satisfied. Docs. 113, 119. The only issue before the Court on this motion is whether the United States falls within one of the four classes of persons subject to liability under § 107(a) – specifically, whether the United States qualifies as an "owner" of the Mine Sites under 42 U.S.C. § 9607(a).

### A. Sovereign Immunity.

The United States first contends that Plaintiff's CERCLA claims are barred by sovereign immunity. Doc. 119 at 8. Plaintiff argues that the United States' sovereign immunity has been waived by CERCLA. Doc. 123 at 12.

Under § 9620(a)(1) of CERCLA, "[e]ach department, agency, and instrumentality of the United States . . . shall be subject to . . . this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 9607 of this title." 42 U.S.C. § 9620(a)(1). The United States concedes that this provision waives its sovereign immunity in at least some cases. Doc. 119 at 8. The United States argues that the waiver does not apply in this case, however, because § 9620 waives sovereign immunity only when the government is liable "in the same manner and to the same extent" as private parties, and "private parties do not engage on a government-to-government basis with tribal nations or have a trust responsibility under federal law." Doc. 119 at 9. As a result, the United States argues, Congress did not clearly waive sovereign immunity for claims asserting government liability based on ownership of land held in trust for the Navajo Nation. *Id.* at 9.

The Ninth Circuit has rejected a similar argument. In *United States v. Shell Oil Co.*, 294 F.3d 1045 (9th Cir. 2002), several oil companies alleged that the United States was liable under CERCLA for contamination arising from war time operations of fuel refining facilities. As in this case, the United States argued that the § 9620(a)(1) waiver applied only when the government was acting in the same manner as a private party – that the waiver was "limited to cases in which [the United States] had undertaken 'nongovernmental' activities." *Id.* at 1052. The Ninth Circuit disagreed:

> the United States has repeatedly been held liable under CERCLA for acts that cannot possibly be characterized as "nongovernmental." The clearest example is the United States' immense CERCLA liability for cleanups associated with military installations and activity. Private parties do not operate military bases, and yet the United States has been found liable for the cleanup of hazardous wastes at military facilities.

*Id.* at 1053. *Shell Oil* held that "CERCLA's waiver of sovereign immunity is coextensive with the scope of liability imposed by 42 U.S.C. § 9607. If § 9607 provides for liability, then § 9620(a)(1) waives sovereign immunity to that liability." *Id.*

The United States seeks to distinguish *Shell Oil*, arguing that it "did not consider the situation here – whether CERCLA's waiver allows an 'owner' liability claim based on land held in trust for the Nation – and nothing in the statute unequivocally establishes Congress intended to expose the United States to El Paso's 'owner' claim." Doc. 119 at 9. But *Shell Oil* specifically held that the United States could be held liable under CERLCA for uniquely governmental activities. 294 F.3d at 1053. Moreover, by holding that the waiver of sovereign immunity is co-extensive with § 9607, *Shell Oil* makes clear that the United States can be held liable under CERCLA whenever it meets the requirements for liability as an owner under § 9607(a)(1). Thus, while the United States' "government-to-government relationship with the Nation" may affect whether it is an owner subject to liability under § 9607, if it is, *Shell Oil* makes clear that sovereign immunity does not bar the claim.

The United States also argues that "imposing CERCLA liability on the United States *solely* for holding title to land for the benefit of the Nation leads to absurd results that cannot be accepted." Doc. 119 at 9. According to this argument, imposing "'owner' liability on the United States solely because it holds bare title to trust lands, could lead to a dramatic expansion of the United States' CERCLA liability with respect to hundreds of thousands of acres of tribal lands across the country, necessitating tighter federal oversight over tribes and undercutting the United States' policy of promoting tribal welfare, self-determination, and economic development." *Id.* at 10. The Ninth Circuit rejected a similar argument in *Shell Oil*:

> We recognize that by making the United States liable "in the same manner and to the same extent" as a private party, § 9620 does subject the government to significant risk of liability. But the government is subject to liability only to the extent of the substantive provisions of CERCLA. That is, the waiver of sovereign immunity is coextensive with the scope of liability under 42 U.S.C. § 9607, but the United States is liable under that section only when it qualifies as an owner or operator of a facility, an arranger of waste disposal, or an entity that accepts waste for treatment or disposal. Otherwise, it is not liable and it maintains its sovereign immunity.

*Id.*

The United States further argues that because CERCLA does not eliminate the *Nation's* sovereign immunity, it would be inequitable to impose CERCLA liability on the United States when it is simply acting as a trustee for the Nation. Doc. 119 at 11. But § 9620 expressly makes the United States liable "in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 9607 of this title." 42 U.S.C. § 9620(a)(1). Whether this waiver is fair or wise when CERCLA does not also waive the Navajo Nation's sovereign immunity is a policy question for Congress to resolve, not a legal question for the Court.

The United States argues that it acquires the Nation's sovereign immunity when it acts as a trustee for the Nation. This argument is inconsistent with the plain language of § 9620(a)(1), which recognizes liability for "[e]ach department, agency, and

instrumentality of the United States (including the executive, legislative, and judicial branches of government)[.]" The statute makes no exception for cases where the federal government somehow acquires immunity from another sovereign. And the Court is not persuaded by the two old cases cited by the government, *United States v. U. S. Fidelity & Guarantee Co.*, 309 U.S. 506, 513 (1940), and *Haile v. Saunooke*, 246 F.2d 293, 297-98 (4th Cir. 1957). Neither case addressed the liability of the United States under CERCLA.

*U.S. Fidelity* held that a counterclaim could not be asserted against the United States in a case where the United States filed suit on behalf of Indian Nations. 309 U.S. at 512. The Supreme Court found that "[n]o statutory authority granted jurisdiction to the Missouri Court to adjudicate a cross-claim against the United States." *Id.* Here, CERCLA grants authority to assert a claim against the United States if it qualifies for liability as an owner.

In *Haile*, the Fourth Circuit held that plaintiffs injured when a bridge collapsed on an Indian reservation could not sue the Indian tribe because of the tribe's sovereign immunity, and could not circumvent that immunity by suing the United States under the Tort Claims Act as a trustee for the tribe. *Haile* explained:

> There is nothing in the federal Tort Claims Act which authorizes any such suit. That act authorizes suit against the government for damages caused by an employee of the government acting within the scope of his office or employment, not a suit against wards of the government nor against the government as their guardian for damages resulting from their acts, and the position of plaintiffs is not helped by reference to the Uniform Trusts Act.

246 F.2d at 298. *Haile*'s holding that the Tort Claims Act does not permit suit against the United States as trustee for an Indian tribe says nothing about whether CERCLA authorizes this action.

The Court will follow Ninth Circuit law. "CERCLA's waiver of sovereign immunity is coextensive with the scope of liability imposed by 42 U.S.C. § 9607." *Shell Oil*, 294 F.3d at 1053. The key question, therefore, is whether the United States is liable

as an owner under § 9607. "If § 9607 provides for liability, then § 9620(a)(1) waives sovereign immunity to that liability." *Id*.

### B. Is the United States Liable as an Owner Under CERCLA?

The parties agree that the United States holds fee title to the Indian trust land underlying the Mine Sites. Plaintiff argues that an individual holding fee title is, without more, the owner of a facility under CERCLA. Doc. 114. The United States contends that courts must look beyond bare legal title and determine whether there are sufficient indicia of ownership. Doc. 119. The Court will discuss the relevant Ninth Circuit law and the parties' arguments, and call for more briefing.

#### 1. The Meaning of "Owner" in the Ninth Circuit.

CERCLA imposes liability on "the owner and operator of a vessel or a facility" and "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed[.]" 42 U.S.C. § 9607(a)(1), (2). The statute defines "owner" as "any person owning" a facility. 42 U.S.C. § 9601(20)(A). When a statute provides such a circular definition of a term, courts look to the term's ordinary meaning. *Long Beach Unified Sch. Dist. v. Dorothy B. Godwin California Living Trust*, 32 F.3d 1364, 1368 (9th Cir. 1994). As a result, the Ninth Circuit has looked to the common law – including the law of the State where the property is located – for guidance when deciding whether an entity is an owner under CERCLA. *San Pedro*, 635 F.3d at 443.

Plaintiff contends that the Ninth Circuit has "accepted the general principle that holding fee title is itself, without more, sufficient to support a finding of liability under CERCLA." Doc. 114 at 11 (citing *San Pedro*, 635 F.3d at 451-52). The Court does not agree.

*Long Beach* considered whether the holder of an easement on land that contained a hazardous waste facility was liable for cleanup costs as an owner. 32 F.3d at 1365. The Ninth Circuit analyzed state court cases, mostly from California (where the facility was located), and determined that "[t]he common law does not regard an easement holder as

the owner of the property burdened by it." *Id.* at 1368. As a result, the Ninth Circuit found "no basis for holding that easement holders are owners for purposes of CERCLA liability." *Id.* at 1368-69. The court specifically declined to decide whether ownership under the common law was sufficient for ownership under CERCLA. *Id.* at 1369 n. 5.

The Ninth Circuit again considered the meaning of "owner" in *San Pedro*. The court relied on *Long Beach* for the established "rule that this court should look to the common law – including the law of the state where the land at issue is located – in determining whether a party [i]s an 'owner' for purposes of CERCLA liability." *San Pedro*, 635 F.3d at 448. The issue was whether the holder of a permit for specific use of real property was a CERCLA owner. *Id.* at 449. Reviewing case law from California and other states, the Ninth Circuit found a "common law distinction between ownership and possessory interests," and concluded that "the holder of a permit for specific use of real property is not the 'owner' of that real property, where, as here, the fee title owner retained power to control the permittee's use of the real property." *Id.* at 449, 451.

*San Pedro* did not, as Plaintiff suggests, hold that mere fee title to real estate made the holder of that title liable under CERCLA. Rather, it recognized that even holders of fee title can have less than full and absolute ownership of property. The court noted the distinction between what it called "*absolute* title ownership" and lesser interests in real estate. *Id.* at 448 (emphasis added). It noted that California law "used the unmodified term 'owner'" to mean "an *absolute* owner." *Id.* at 451 (emphasis added). And it expressly did "not reach the question whether any other property interest less than *absolute* title to real property . . . is sufficient to expose the holder of that interest to 'owner' liability under CERCLA." *Id.* at 452 n. 10 (emphasis added). The Ninth Circuit did suggest, "without deciding, that Congress intended to limit 'owner' liability to those individuals possessing all of the proverbial 'sticks in the bundle of rights,' including fee title to the property." *Id.* But that issue was left for another day.[1]

---

[1] Plaintiff focuses on language from *San Pedro* which states that "the CERCLA framework holds liable . . . the passive *title owner* of real property who acquiesces in another's discharge of harmful pollutants on his real property." *Id.* at 451-52 (emphasis

Thus, the Ninth Circuit has not decided the question in this case – whether mere fee title is sufficient for owner liability under CERCLA. In addition, *San Pedro* appears to have recognized a distinction between "absolute" title ownership, where all of the rights of ownership are possessed, and something less. *Id*. at 448-52. The United States argues that it holds something less in this case.

## 2. What Standard Should Govern This Case?

Although the holdings of *Long Beach* and *San Pedro* do not control this case, they do provide some important starting points in deciding whether the United States is an owner under CERCLA.

First, the term "owner" under CERCLA does not have some specialized meaning – some unique definition adopted by Congress. As *Long Beach* explained, the term has its "ordinary" meaning, not an "unusual or technical" meaning. 32 F.3d at 1368 (quotations marks and citation omitted).

Second, both *Long Beach* and *San Pedro* looked to the common law of the state where the property was located to decide whether the defendants should be considered owners under CERCLA. In this case, there is no governing state law because we are dealing with reservation land. It is significant, nonetheless, that the Ninth Circuit looked to the law governing the property, rather than facts unique to control of the property, in deciding whether the person or entity in question was an owner.

This appears to have been a deliberate choice. Before *San Pedro*, a line of district court cases had adopted something called the "site control" test. These cases determined CERCLA ownership liability by examining whether the holder of an interest (typically a lessee) possessed "site control" over a facility. *See*, *e.g.*, *Delaney v. Town of Carmel*, 55 F. Supp. 2d 237, 258-59 (S.D.N.Y. 1999); *Castlerock Estates, Inc. v. Estate of Markham*, 871 F. Supp. 360, 367 (N.D. Cal. 1994); *Burlington N. R.R. v. Woods Indus.*,

---

added). But this language is dictum in light of *San Pedro*'s statement that it was not deciding this issue. In light of the other statements in *San Pedro*, this dictum also plainly refers to a title holder that holds all rights in the property – what *San Pedro* referred to as "absolute" title or all the "sticks in the bundle of rights."

*Inc.*, 815 F. Supp. 1384, 1391-92 (E.D. Wash. 1993); *United States v. A & N Cleaners & Launderers, Inc.*, 788 F. Supp. 1317, 1333 (S.D.N.Y. 1992); *United States v. South Carolina Recycling & Disposal, Inc.*, 653 F. Supp. 984 (D.S.C. 1986)). The Second Circuit expanded the site-control test into a five-factor inquiry for determining de-facto ownership. *See Commander Oil Corporation v. Barlo Equipment. Corporation*, 215 F.3d 321, 325 (2d Cir. 2000)). The Ninth Circuit in *San Pedro* specifically declined to follow these cases, finding the site control and Second Circuit tests to be "a nebulous and flexible analytical framework . . . susceptible to endless manipulation." 635 F.3d at 449. *San Pedro* also recognized that "operator" liability under CERCLA – another category of liable parties recognized in CERCLA – considers the entity's authority to control the cause of the contamination. Defining owner liability in terms of control over operations at a site would blur the distinction between CERCLA owners and CERCLA operators and would threaten to render operator liability superfluous. *Id.* at 452 & n.9.

Thus, it appears that the Ninth Circuit looks to the law governing the property, rather than the case-specific control exercised by the accused entity, to determine whether the entity is an owner under CERCLA. That task is complicated in this case because the Mine Sites are not governed by state law. They are located on the Navajo reservation, and "[i]ssues of ownership and property rights concerning Indian land are generally the province of the federal statutory and common law." *United States v. Newmont USA Ltd.*, 504 F. Supp. 2d 1050, 1061 (E.D. Wash. 2007) (citing *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 667-70 (1974)).

The parties have not cited, and the Court has not found, a clear body of federal common law on whether the interests of the United States as a trustee for tribal lands are sufficient to make it an owner for purposes of CERCLA. Land ownership on reservations is complicated. One complication arises from the fact that Indian tribes also hold an interest in reservation land.

> It very early became accepted doctrine in this Court that although fee title to the lands occupied by Indians when the colonists arrived became vested in the sovereign – first the discovering European nation and later the

> original States and the United States – a right of occupancy in the Indian tribes was nevertheless recognized. That right, sometimes called Indian title and good against all but the sovereign, could be terminated only by sovereign act. Once the United States was organized and the Constitution adopted, these tribal rights to Indian lands became the exclusive province of the federal law. Indian title, recognized to be only a right of occupancy, was extinguishable only by the United States. The Federal Government took early steps to deal with the Indians through treaty, the principal purpose often being to recognize and guarantee the rights of Indians to specified areas of land.

*Oneida Indian Nation*, 414 U.S. at 667-68. Thus, "[w]hen a reservation is established by a treaty ratified by the Senate or a statute, the quality of the rights thereby secured to the occupants of the reservation depends upon the language or purpose of the congressional action." *Hynes v. Grimes Packing Co.*, 337 U.S. 86, 103-04 (1949).

The Navajo reservation was created by treaty. This would suggest that the Court must consider the laws that brought it into existence when deciding the respective rights of the United States and the Nation. The only case cited by the parties that determined whether the United States is an owner under CERCLA by virtue of its trust relationship to Indian lands engaged in just such a detailed inquiry. *See Newmont*, 504 F. Supp. 2d 1050.

Unfortunately, Plaintiff provides little discussion of the history, laws, or governmental relationships of the Navajo reservation. Plaintiff instead argues that the question in this case has been decided by *San Pedro*, an argument the Court rejects for reasons identified above. Plaintiff also cites Arizona common law cases, but Arizona law does not apply to the Mine Sites. Finally, Plaintiff relies heavily on *City of Phoenix, Ariz. v. Garbage Servs. Co.*, 827 F. Supp. 600, 602 (D. Ariz. 1993). But *City of Phoenix* did not concern reservation land; it addressed the CERCLA owner liability of a trustee that held fee title to private property. *City of Phoenix* predated *Long Beach* and *San Pedro*, did not look to federal or even Arizona common law, and relied on CERCLA legislative history, law journal articles, and general trust law. *Id.* at 568. It cited a 1988 order from the District of New Hampshire which found that a defendant who was both the trustee

and the beneficiary of a trust was an owner for purposes of CERCLA. *Id.* (citing *United States v. Burns*, No. C-88-94-L, 1988 WL 242553, at *2 (D.N.H. Sept. 12, 1988)). The Court does not view *City of Phoenix* as particularly relevant when deciding the status of the United States with respect to Navajo reservation land.[2]

The United States does address the origins of the Navajo reservation, which is somewhat helpful. But the United States then relies primarily on *United States v. Friedland*, 152 F. Supp. 2d 1234 (D. Colo. 2001), a case that follows the "site control" line of cases that *San Pedro* specifically declined to apply. And as mentioned below, most of the historical facts provided by the United States concern the level of control exercised at the Mine Sites by the Nation and the United States rather than the law that governs the reservation lands. As a result, the arguments of the United States are not significantly more helpful than Plaintiffs. No party engages in a detailed analysis of the law governing lands on the Navajo reservation and what that law means for the United States status as a CERCLA owner.

Perhaps the Court will conclude at the end of the day that considering facts related to the level of site control exercised by the United States is an inquiry that cannot be avoided. But at this point, it appears that *San Pedro* rejects such an approach and directs the Court instead to focus on the law governing Mine Sites. More briefing on that issue is needed.

**C.    Additional Briefing.**

The Court concludes that the current level of briefing is not sufficient for a definitive ruling on the question of ownership liability. Nor is the Court persuaded at this

---

[2] Other courts considering the liability of trustees as owners under CERCLA have reached differing conclusions. In *United States v. Petersen Sand & Gravel, Inc.*, the District Court for the Northern District of Illinois applied Illinois trust law and noted that "[a]n Illinois land trust is an odd legal creature" according to which "[t]he trustee's sole duty under the trust is to hold and dispose of legal title at the written direction of the beneficiaries." 806 F. Supp. 1346, 1358 (N.D. Ill. 1992). The Court held that such a trustee is not the owner of land for purposes of CERCLA. *Id.* at 1359. The Eleventh Circuit, by contrast, applied Georgia law and held that a trustee owned legal title and therefore was an owner under CERCLA. *Canadyne-Georgia Corp. v. NationsBank, N.A. (S.)*, 183 F.3d 1269, 1273 (11th Cir. 1999).

stage that ownership is a fact-laden issue that should be reserved for trial. The Court directs the parties to consider the following in providing the additional briefing:

1. As described above, the Court reads *Long Beach* and *San Pedro* as requiring the Court to focus on the *law* that governs the Mine Sites. The parties should identify and provide the relevant law. Some of that law is mentioned in the United States' briefing already, and in the United States' statement of facts (Doc. 120, ¶¶ 30-32, 36, 40), but the Court lacks the level of detailed legal discussion that was used by the district court in *Newmont*. *See* 504 F. Supp. 2d at 1061-67. The parties may also address whether such a level of detail is necessary for a decision in this case.

2. It appears from the United States' submissions that the Navajo reservation was created by treaty and that the Navajo Nation has a compensable Fifth Amendment right in its reservation land. At least part of the Spokane reservation at issue in *Newmont* was created by executive order and lacked a compensable Fifth Amendment interest. *Id.* at 1064-65. (Although the allocated portions of the reservation appear to have such an interest. *Id.* at 1066.) How significant is this fact in determining whether the United States retains sufficient ownership interests to qualify as an owner under CERCLA?

3. In addition to discussing the law that governed the Spokane reservation, *Newmont* addressed indicia of ownership. *Id.* at 1067-74. This discussion was premised on the approach taken in *Castlerock Estates*, 871 F. Supp. 360 (*see Newmont*, 504 F. Supp. 2d at 1069, 1074), one of the line of cases that *San Pedro* specifically declined to follow, *see* 635 F.3d at 448-49 & n.6 (specifically mentioning *Castlerock*). For this reason, the Court doubts whether the "indicia of ownership" portion of *Newmont* is still relevant. The Court also notes that most of the facts provided by Plaintiff (Doc. 115) and most of the additional facts provided by the United States (Doc. 120, ¶¶ 35-70) are facts unique to the behaviors of the parties in this case – as opposed to federal law governing tribal lands – that would appear to be relevant only in a site-control

analysis.[3] Is it proper for the Court to consider such facts in light of *San Pedro*'s rejection of the site-control line of cases?[4] What role, if any, should unique facts bearing on indicia of ownership play in this case? And if they should play a role, can the owner issue be decided at summary judgment or must it be reserved until the more complete factual presentation at trial?

4. Plaintiff should respond to the facts set forth in the United States' statement of facts. Doc. 120, ¶¶ 35-70. Plaintiff may do so in reply statement of facts.

**IT IS ORDERED:**

1. The Court holds that the United States has waived its sovereign immunity to the extent it is liable under CERCLA. The remainder of Plaintiff's motion for partial summary judgment is taken under advisement.

2. Plaintiff shall file a supplemental memorandum on or before **June 16, 2017**. The memorandum shall not exceed 12 pages, and the accompanying reply statement of facts shall not exceed 10 pages. The United States shall file a supplemental memorandum, limited to 12 pages, on or before **June 30, 2017**. No supplemental reply will be filed unless ordered by the Court.

Dated this 2nd day of June, 2017.

David G. Campbell
United States District Judge

---

[3] The Court notes that the law governing the ownership rights to the Navajo reservation lands will be unique to that reservation, but this case-specific *law* relating to the rights and obligations of the parties is distinct from case-specific *facts* relating to the behavior of the parties that courts have looked to in other cases as indicia of ownership.

[4] The Court notes that even *San Pedro*, after stating that it would not follow the approach of the site-control cases or the Second Circuit, could not resist discussing facts unique to the case in support of the "logic" of the position it adopted. *See* 635 F.3d at 451 (headnote 6).