**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| El Paso Natural Gas Company, LLC, | No. CV14-8165-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| United States of America, et al., | |
| Defendants. | |

Plaintiff El Paso Natural Gas Company, LLC has filed a motion to enforce the Court's previous judgment in an environmental liability case brought against the United States under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). Doc. 227. The motion is fully briefed, and no party requests an evidentiary hearing or oral argument. *See* Docs. 227, 231, 235. The Court will grant the motion in part and deny it in part.[1]

**I.    Background.**

In 2014, El Paso filed this CERCLA action against the United States seeking costs relating to the cleanup of contamination at El Paso's former uranium mine sites in the Cameron, Arizona area ("Mine Sites"). Doc. 1. Following a bench trial in 2019, the Court allocated 65% of past response costs to El Paso and 35% to the United States. Doc. 224 at

---

[1] As discussed below, El Paso's request is best construed as a motion for further relief under the Declaratory Judgment Act, rather than a motion to enforce judgment. *See* 28 U.S.C. § 2202.

1.[2]  The Court ordered the same allocation for future response costs, but did not specify a process for reimbursement.  *Id.*

The United States subsequently reimbursed El Paso for its share of the existing cleanup costs and nearly $2.5 million in future response costs agreed to by the parties. Doc. 231 at 7.  The current motion seeks to recover three categories of costs that El Paso contends are reimbursable future response costs under the judgment.  These costs relate to work performed by Doug Stavinoha, an El Paso employee who supervised the contractors hired to clean up the Mine Sites; Nick Ceto, a contractor specializing in CERCLA mine site remediation who advised El Paso on working with the EPA and fulfilling its obligations under the Administrative Order of Consent ("AOC") entered into by El Paso and the EPA; and Doug Shoop, a contractor with experience conducting government-to-government consultation with tribal nations and the EPA regarding CERCLA remediation on tribal land.  Doc. 227 at 5.

The United States contends that El Paso must file a new lawsuit to recover these costs, but in any event has not provided sufficient documentation to support the costs or demonstrate that they are "necessary" under the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP"), a set of EPA regulations defining procedures for responding to releases of hazardous substances.  *See* 42 U.S.C. § 9605; Doc. 231.

## II.     Relevant Legal Standards.

CERCLA permits private parties to recover response costs from those who "contributed to the dumping of hazardous waste at a site."  *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1152 (9th Cir. 1989) (citing 42 U.S.C. § 9607(a)).  To recoup response costs from the United States, El Paso must affirmatively show that the costs were necessary and consistent with the NCP, which is "designed to make the party seeking response costs choose a cost-effective course of action to protect public health and the environment."  *Wash. State Dep't of Transp. v. Wash. Nat'l Gas Co.*, 59 F.3d 793, 802 (9th

---

[2] Citations are to page numbers attached to the top of pages by the Court's electronic filing system.

Cir. 1995); *see also Young v. United States*, 394 F.3d 858, 863 (10th Cir. 2005) (noting that a private party "bears the burden of proving any 'response costs' were necessary and consistent with the NCP."). Response costs are necessary when "an actual and real threat to human health or the environment exists," and are consistent with the NCP "if the action, when evaluated as a whole, is in substantial compliance with it." *City of Colton v. Am. Promotional Events, Inc.,* 614 F.3d 998, 1003 (9th Cir. 2010) (internal citations and quotation marks omitted); *see also* 40 C.F.R. § 300.700(c)(3)(i). The NCP requires CERCLA plaintiffs to provide "sufficient" documentation supporting any reimbursement request, including an "accurate accounting of federal, state, or private party costs incurred for response actions." 40 C.F.R. § 300.160(a)(1).

**III.   Discussion.**

      **A.   El Paso May Seek Response Costs By Motion Under 28 U.S.C. § 2202.**

The United States argues that a motion to enforce judgment is an improper procedural vehicle for requesting reimbursement. Doc. 231 at 11. As noted above, the Court allocated liability but did not designate the specific future response costs to be borne by each party. Doc. 224 at 1. The United States contends that El Paso must file a new CERCLA lawsuit to obtain the relief it seeks. Doc. 231 at 11-12. Awarding future costs based on El Paso's current motion, the United States argues, would allow El Paso to make an "end run" around its evidentiary burden to show that its costs were necessary and consistent under the NCP. *Id.* at 13.

The Court does not agree. Section 2202 of the Declaratory Judgment Act provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. In the CERCLA context, this provision authorizes courts to fix contribution amounts after previously making a judgment on liability, thus "sav[ing] litigants and courts substantial time and money, leaving for the future only the need to fix the amount of contribution and affording the court flexibility with respect to the time and manner for doing so." *New York v. Solvent Chem. Co., Inc*.,

664 F.3d 22, 27 (2d Cir. 2011).  Requiring El Paso to file a new CERCLA complaint would negate efficiencies created by the Court's previous trial and declaratory judgment.  And granting further relief in this case would not, as the United States claims, allow El Paso to make an end run around its burden of proof.  *State of Cal.*, 155 F. Supp. 3d at 1096.  El Paso must still prove that its actions were necessary and consistent with the NCP, and prove its costs by a preponderance of the evidence.  *See, e.g., Edward B. Marks Music Corp. v. Charles K. Harris Music Pub. Co.,* 255 F.2d 518, 522 (2d Cir. 1958) ("[Section 2202] authorizes further or new relief based on the declaratory judgment, and any additional facts which might be necessary to support such relief can be proved on the hearing provided in the section or in an ancillary proceeding if that is necessary.").  The Court accordingly will permit El Paso to proceed by motion.[3]

### B.       Necessity of Response Costs – Stavinoha.

Response costs are "necessary" when "an actual and real threat to human health or the environment exists."  *City of Colton*, 614 F.3d at 1003.  The United States does not dispute that Stavinoha's work was aimed at addressing a threat to human health or the environment.  Instead, it claims that because Stavinoha is a corporate employee of El Paso, his work is aimed at "corporate defensive interests" and thus is not reimbursable.   Doc. 231 at 14.  It cites a Supreme Court case holding that litigation-related attorney fees are not recoverable "necessary costs of response" under CERCLA.  *See Key Tronic Corp. v. United States*, 511 U.S. 809, 820-21 (1994).

---

[3] The United States cites *United States v. Hardage*, 982 F.2d 1436, 1445 (10th Cir. 1992), to argue that liability and recoverability are two distinct issues under CERCLA, and that El Paso must file another CERCLA claim to recover the disputed costs.  But *Hardage* simply states that entry of a declaratory judgment on liability for future response costs does not foreclose a liable party from challenging the recoverability of those costs by asserting that they are inconsistent with the NCP.  *See id.*  It never states that a party must file a new CERCLA case to recoup costs.  Further, the Court concludes that it can resolve the parties' dispute on the present record without holding an additional evidentiary hearing – a hearing which neither side requests.  *See Westport Ins. Corp. v. Bayer*, 284 F.3d 489, 500 (3d Cir. 2002) (court may resolve motion for further relief on the present record); *Carolina Pizza Huts, Inc. v. Woodward,* 67 F.3d 294 (4th Cir. 1995) (under § 2202, "a hearing was unnecessary, because the parties had argued the earlier motions for summary judgment and had offered significant evidence prior to the court's decision").

*Key Tronic* offers no support for the United States' position.  There, the Supreme Court noted that because attorney's fees were "generally . . . not a recoverable cost of litigation," any recovery of such fees would require clear evidence of congressional intent. 511 U.S. at 814-15.  This evidence was missing from CERCLA, which contained neither a specific reference to attorney's fees nor an intent to provide for such fees.  *Id.* at 815.  At no point does *Key Tronic* state that a party cannot be motivated by corporate defensive interests in their cleanup efforts.  In fact, the Ninth Circuit has stated that whether a party has a "business or other motive in cleaning up [a] property" is irrelevant in determining necessity under the NCP because "a private plaintiff will almost always have a business or financial motive for cleaning up a site," whether it be "fear of a government enforcement action, landowner liability, and even self-serving economic reasons."  *Carson Harbor Village, Ltd. V. Unocal Corp.*, 270 F.3d 863, 872 (9th Cir. 2001) (en banc).  Stavinoha's role as a corporate employee does not render his work unnecessary under the NCP.

## C.   Documentation of Response Costs.

The NCP requires that documentation be "sufficient to provide . . . [an] accurate accounting of federal, state, or private party costs incurred for response actions[.]"  40 C.F.R. § 300.160(a)(1).  Courts have considerable leeway in determining what constitutes sufficient documentation.  *United States v. W.R. Grace & Co. Conn.,* 280 F. Supp. 2d 1149, 1179-81 (D. Mont. 2003) (noting that the regulations do not "establish prescriptive standards for the content of cost documents.").  As one court noted:

> Courts have found the following documents sufficient: "detailed cost summaries"; "extensive documentation of costs in the form of time sheets and payroll documents"; "declarations from EPA Staff, attorneys, accountants, and supervisors attesting to the work they performed and time spent"; and "affidavits of government employees responsible for maintaining cost data supported by 'summaries of cost data,'" and "time sheets sufficient to document payroll costs."

*Exxon Mobil Corp. v. United States*, 335 F. Supp. 3d 889, 925 (S.D. Tex. 2018) (collecting cases).  The key is whether the documents are "sufficient to support the cost claim" and show the court that "costs have been proven by a preponderance of the evidence."  *Id.* at

924 (quoting *W.R. Grace & Co.*, 280 F. Supp. 2d at 1179-81).  "[C]ourts have applied civil evidentiary standards to assess the adequacy of cost documentation supporting a CERCLA cost recovery claim, rather than imposing any additional burden."  *W.R. Grace & Co.*, 280 F. Supp. 2d at 1180.

    **1.**  **Stavinoha.**

  In 2013, El Paso entered into the AOC with the EPA and agreed to perform site assessments and other removal actions at the Mine Sites.  Doc. 227 at 6.  The AOC required El Paso to retain contractors to perform the removal actions under the supervision of a designated project coordinator – in this case, El Paso employee Doug Stavinoha.  *Id.* Stavinoha oversaw the contractors on-site, reviewed and commented on their work, communicated with the EPA to carry out the removal action under the terms of the AOC, and served as the primary contact between El Paso and the EPA.  Doc. 227-5 ¶¶ 4-5.

  El Paso requested that the United States reimburse it for 35% of Stavinoha's payroll costs.  El Paso's first two claims sought reimbursement of $102,479.77 for costs incurred from September 1, 2016 to August 31, 2019.  Doc. 227 at 17.  The third claim sought reimbursement of $4,270.05 for costs incurred from September 1, 2019 to April 30, 2020. *Id.* at 18.  The United States rejected these claims on the recommendation of two expert consultants – environmental scientist John Robertson, who has experience evaluating response claims in environmental litigation, and certified public accountant Wiley Wright, who provided a forensic analysis of the claims.  Robertson and Wright issued their opinions independently of one another.  Docs. 231-1 ¶10, 231-2 ¶ 11.

  Robertson and Wright noted that the claims submitted for September 1, 2016 to August 31, 2019 were insufficient because El Paso merely provided tables estimating how much time Stavinoha spent at the Mine Sites without timesheets or other contemporaneous accounting.  Docs. 231-1 ¶ 15; 231-2 ¶¶ 17-18.  Robertson also concluded that Stavinoha's claimed level of involvement at the Mine Sites – 75.5% of his total time – was unreasonable because the cleanup program was conducted entirely by contractors, with Stavinoha merely playing a supervisory role.  Doc. 231-1 ¶ 16.

El Paso's third claim for September 1, 2019 to April 30, 2020 appears to contain the basic time records missing from the previous two claims. Doc. 231-2 ¶ 19. Nonetheless, both experts found the documentation deficient. Robertson noted that El Paso failed to provide specific information about tasks Stavinoha completed to assist with the cleanup of the sites, and Wiley noted that the documentation did not specify when the time was recorded, making it impossible to verify the expenses and confirm their reliability. Docs. 231-1 ¶ 18; 231-2 ¶ 19.

El Paso responds that "costs can be proven through a broad variety of documentation," and characterizes the government's argument as the type of "overreaching demand[] for detailed cost documentation" that has been rejected in courts across the country, including the Ninth Circuit. Doc. 227 at 15. While El Paso acknowledges that its reimbursement requests for the September 1, 2016 to August 31, 2019 period do not contain time sheets or "descriptive documentation" of Stavinoha's work, it argues they constitute an "accurate accounting" of response costs under the NCP. *See* 40 C.F.R. § 300.160(a)(1).[4]

El Paso relies primarily on two cases. In *Exxon Mobil*, a district court held that a CERCLA defendant was not required as a matter of law to submit both invoices and a proof of payment when seeking reimbursement from the government, and that such a requirement would be an "overly strict reading of the National Contingency Plan's cost-documentation provision." 335 F. Supp. 3d at 926. And in *California ex rel. California Dep't of Toxic Servs. v. Neville Chem. Co*., the court rejected a private party's argument that an agency's employee timesheets were insufficient because they failed to describe particular tasks the employees engaged in at a given time. 213 F. Supp. 2d 1134, 1139 (C.D. Cal. 2002).

---

[4] El Paso also notes that the EPA has invoiced El Paso for over $600,000 in payroll costs for dozens of EPA employees, yet has never provided the level of granularity it now demands from El Paso. Doc. 227 at 11, 15. The United States responds, correctly, that CERCLA regulations apply different standards to private parties than to the federal government. While the federal government is responsible only for response costs that are necessary and consistent with the NCP, *see* 42 U.S.C. § 9607(a)(4)(B), private parties are responsible for "all costs" of removal or remedial action that are "not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A).

1    El Paso is correct that courts have avoided hardline rules for what constitutes
2    adequate cost documentation under the regulations, but courts accept documentation only
3    where it is "adequate or sufficient to support the cost claim" and "costs have been proven
4    by a preponderance of the evidence." *Exxon Mobil*, 335 F. Supp. 3d at 924; 40 C.F.R.
5    § 300.160(a)(1).

6    In *Exxon Mobil*, all costs for which Exxon sought reimbursement, although not
7    necessarily supported by both an invoice and proof of payment, were nonetheless supported
8    in some way that enabled the court to substantiate the costs, whether through cost reports,
9    accounting records, cleanup reports, or government agency correspondence. 335 F. Supp.
10   3d at 926.   The court reasonably concluded that the documentation was sufficient,
11   especially since the United States demanded documentation that was decades old and
12   difficult to retrieve. *Id.*

13   In *Neville*, the court held that time sheets constituted sufficient documentation
14   where they showed "in detail" the time employees spent at the cleanup site, their billing
15   rates, and their general activities. 213 F. Supp. 2d at 1139.   Other courts similarly have
16   found that parties seeking reimbursement meet their prima facie burden only where the
17   documentation contains substantial detail.   *See*, *e.g.*, *United States v. Chromalloy Am.*
18   *Corp.*, 158 F.3d 345, 352 (5th Cir. 1998) (district court had an adequate basis upon which
19   to find the costs reasonable and necessary where the party seeking reimbursement had
20   "submitted detailed cost summaries supporting its oversight expenses."); *United States v.*
21   *Hardage*, 982 F.2d 1436, 1442–43 (10th Cir. 1992) (government met its burden where it
22   provided "extensive documentation" to support its requested costs, including affidavits
23   supported by summaries of cost data and the source of that data); *United States v. Chrysler*
24   *Corp.*, 168 F. Supp. 2d 754, 774 (N.D. Ohio 2001) (documentation sufficient where costs
25   were documented by report summaries, time attendance reports, labor cost reports, and an
26   expert declaration explaining how to calculate costs); *United States v. Northernaire Plating*
27   *Co.*, 685 F. Supp. 1410, 1415 (W.D. Mich. 1988) (documentation sufficient where it
28   detailed "the source and computation of each cost item requested.").

### a.     Costs Incurred from September 2016-August 2019.

Most of El Paso's documentation related to Stavinoha falls well short of the standard required by these cases.  El Paso paid Stavinoha $292,799.33 for his work as project coordinator from September 1, 2016 to August 31, 2019.  Doc. 227 at 17.  It seeks to recover 35% of these costs, or $102,479.77, from the United States.  *Id.*  It submitted two reimbursement requests during this period: one for work conducted from September 1, 2016 to June 30, 2019 ($96,653.76), and another for work conducted from July 1, 2019 to August 31, 2019 ($5,826.01).  Docs. 227-2 at 9; 227-4 at 9, 12.

The Court finds El Paso's exhibits in support of these claims to be wholly inadequate to meet its burden of proof.  The exhibits are confusing, poorly explained, and largely unsubstantiated.

El Paso did not generate contemporaneous timekeeping records for employees from September 1, 2016 to June 30, 2019, and attempts to substantiate its claim for 35% of Stavinoha's wages during this period with a single bare-bones table listing the number of days in the work week, less paid time off, holidays, jury duty, and administrative functions.  Doc. 227-4 at 12.  The table appears to assume that Stavinoha – who worked on several different projects for the company (*see id.* at 11) – worked 8 hours every available day on the Mine Sites.  The table cites no supporting documentation confirming the accuracy of its figures, and never explains how El Paso used the numbers in the table to arrive at the $96,653.76 of Stavinoha's salary claimed for this period.  *Id.*

El Paso attempts to provide a bit more substantiation for its second reimbursement request for $5,826.01, covering the period from July 1, 2019 to August 31, 2019.  In addition to including a total days estimate in the table discussed above (Doc. 227-4 at 12), El Paso provides a table listing its "total spend" for Stavinoha's assigned projects with the company (Doc. 227-4 at 11).  The table lists Stavinoha's various projects, denotes the percentage of the overall budget El Paso spent on the Mine Sites (81%), and then assumes – without explaining why – that 81% of Stavinoha's total hours are similarly attributable to the Mine Sites.  Doc. 227-4 at 11.  But El Paso provides no explanation of what the

money in the table was spent for, or why it might correlate to time incurred by Stavinoha at the Mine Sites.  *Id.*  El Paso then uses Stavinoha's purported "burden labor" rate of $81.55 per hour to arrive at $16,645.74 in "burdened labor" costs, of which 35% ($5,826.01) is allegedly attributable to the United States.  *See id.* at 11, 13.

El Paso provides no additional documentation for either time period, other than a declaration from Stavinoha attesting generally that the tables appear to be the "best estimation" of his time spent as project coordinator and a "reasonable estimation of [his] payroll expense" attributable to the Mine Sites.  Doc. 227-5 ¶ 8.  This sparse and largely unexplained evidence does not satisfy El Paso's burden of proving by a preponderance of the evidence that Stavinoha actually incurred the claimed time at the Mine Sites on work that is consistent with the NCP.  *W.R. Grace & Co.*, 280 F. Supp. 2d at 1179-81.  The Court cannot find that this evidence establishes an "accurate accounting of . . . private party costs incurred for response actions."  40 C.F.R. § 300.160(a)(1).

El Paso argues that contemporaneous timekeeping is not a hardline prerequisite for reimbursement.  In *United States v. Chapman*, for example, the Ninth Circuit found that the EPA's documentation of its costs was sufficient solely based on the declaration of an EPA employee and an action memorandum.  146 F.3d 1166, 1171 (9th Cir. 1998).  But as with other cases cited by El Paso, *Chapman* is distinguishable.  The reimbursement request applied only to a narrow time frame for which the EPA lacked an administrative record.  *Id.*  For the other relevant periods, the EPA substantiated its reimbursement requests with "extensive records of recovery costs in the form of timesheets, cost estimates, and accountant and attorney declarations."  *Id.* at 1172.

El Paso also argues that its table is an appropriate surrogate for a more specific accounting, given that it "does not in the general course track and document the specific activities and amount of time its employees spend performing day-to-day duties."  Doc. 227 at 17.  Any gaps in its documentation, it claims, are remedied by Stavinoha's declaration, which attests that El Paso's estimates of his work are reasonable, describes his activities as project coordinator for the relevant periods, and attaches monthly progress

10

1    reports providing contemporaneous records of the removal action activities which he
2    supervised.  *Id.* at 17-18.  The Court is not persuaded.  While it is true that a court can
3    consider the type of documentation a plaintiff's accounting system maintains in assessing
4    the sufficiency of documentation, El Paso must still prove its costs by a preponderance of
5    the evidence.  Stavinoha did not account for his time, and says only that El Paso's
6    retroactive estimations appear reasonable.  Doc. 227-5 ¶ 8.  The attached contractor
7    records, while revealing the types of activities Stavinoha supervised, provide no insight
8    into how much time he spent doing so and give the Court no way to assess the accuracy of
9    the claimed costs. *See id.* at 9-131.

10                    **b.    Costs Incurred from September 2019-April 2020.**

11           Beginning in September 2019 – and apparently after receiving pushback from the
12    United States on its reimbursement requests – El Paso instructed Stavinoha to begin
13    contemporaneously tracking his time.  Doc. 227 at 18.[5]  El Paso's seeks to recover
14    $4,270.05 for the period from September 1, 2019 to April 30, 2020.[6]  For the period from
15    September 1 to December 31, 2019, El Paso provides a list of hours Stavinoha worked each
16    pay period, as well as corresponding payroll and total labor costs.  Doc. 227-4 at 23.  Costs
17    incurred from December 22, 2019 to April 25, 2020 are also supported by daily time entries
18    and descriptions of the activities Stavinoha performed each day, including calls with EPA,
19    discussions with contractors, and strategy discussions.  *Id.* at 59-63.

20           The United States claims that this information is insufficient because El Paso has
21    not provided task-specific information about Stavinoha's work and the timesheets do not
22    specify when they were recorded.  Docs. 231-1 ¶ 18; 231-2 ¶ 19.  But the United States
23    provides no case law suggesting that such detail is necessary.  As discussed above,

24    _____

25           [5] Once Stavinoha began tracking his time, there appears to have been a sharp
      reduction in the amount he billed to the Mine Sites – around 10% of his overall time, as
26    opposed to 75.5% in earlier years.  Doc. 231 at 10, 16.  El Paso attributes this reduction to
      the fact that Stavinoha's involvement required less time as the project proceeded and the
27    fact that work slowed during the COVID-19 pandemic, but these justifications do not
      appear to explain the six-fold drop in time devoted to the Mine Sites.  Doc. 235 at 9-10.

28           [6] The costs include $2,472.98 from September 1 to December 31, 2019 (Doc. 227-
      4 at 23) and $1,797.07 from December 22, 2019 to April 25, 2020 (Doc. 227-4 at 58).

1   Stavinoha's declaration describes his tasks as project manager, and the monthly reports
2   from contractors provide further details about the type of work he supervised and the dates
3   the work was conducted.  *See* Doc. 227-5.  This information is sufficient where El Paso
4   also provides contemporaneous records of Stavinoha's daily work.  The Court will award
5   El Paso $4,270.05 in reimbursement for Stavinoha's work during this period.

6                    **2.     Ceto.**

7         El Paso requests $60,982.76 in reimbursement for contracting work done by Nick
8   Ceto, an environmental consultant hired to advise El Paso on working with the EPA and
9   fulfilling its obligations under the AOC.  Doc. 227-6 ¶ 3.[7]  Among other things, Ceto
10  provided input on El Paso's deliverables to the EPA, oversaw fieldwork, and
11  communicated with the EPA on behalf of El Paso.  *Id.* at ¶ 4.

12        The United States does not contest the reliability of the timekeeping method or
13  accuracy of the charges.  Instead, it claims that El Paso does not provide sufficient
14  information about how Ceto's costs are not duplicative of other environmental consultants
15  and that El Paso fails to justify Ceto's billing rate, which is substantially higher than other
16  consultants on the case.  Docs. 231 at 8; 231-1 ¶ 19; 231-2 ¶ 20.

17        The Court is not persuaded by the government's arguments.  The United States does
18  not make any specific claims that Ceto's work was duplicative of other contractors'; it
19  states only that El Paso has not established that it was not duplicative.  Doc. 231 at 8.  But
20  the United States cites no authority stating that El Paso must meet this burden to prove its
21  costs by a preponderance of the evidence.  El Paso has provided the United States with
22  Ceto's resume, a detailed description of his role assisting El Paso with its remediation
23  efforts, and a summary of how Ceto – a former EPA employee who has managed several
24  major CERCLA mining site cleanups – was instrumental in facilitating a more effective

25
26  _____

27        [7] In its briefing, El Paso requests $67,891.42 for Ceto's work.  *See* Doc. 227 at 6.
    But the invoice to which El Paso cites (*id.* at 20) shows a figure of $60,982.76 (*see*
28  Doc. 227-2 at 11), while other documentation to which it cites (Doc. 227 at 20) shows a
    figure of $61,600 (*see* Doc. 227-1 at 30).  The Court will use the lowest of these numbers.

                                         12

1    working relationship between El Paso and EPA.  Doc. 227-1 at 40-46.  This documentation
2    sufficiently demonstrates why Ceto's particular expertise was necessary for the project.

3          Similarly, while the United States claims that Ceto's billing rate was higher than
4    other consultants on the case, it does not claim that the rate is beyond industry standards,
5    nor does it explain why Ceto's higher billing rate justifies denying his costs.[8]  The Court
6    concludes that El Paso has supported Ceto's costs by a preponderance of the evidence and
7    will order the government to pay $60,982.76 in costs for Ceto's work.

8                          **3.     Shoop.**

9          El Paso claims that the United States denied $2,077.89 in costs associated with
10   Douglas Shoop, who aided El Paso in negotiating and obtaining timely approval of
11   CERCLA remedial decisions from the EPA and Navajo Nation.  Doc. 227-8 at 2.  But as
12   the United States notes, and El Paso does not dispute in its reply, El Paso has submitted no
13   evidence of Shoop's claim ever being denied by the United States.  Doc. 231 at 8 n.2.
14   Because El Paso bears the burden of establishing its costs by a preponderance of the
15   evidence, the Court will deny El Paso's request for reimbursement of Shoop's costs.

16         **IT IS ORDERED:**

17         1.     El Paso's motion (Doc. 227) is **granted in part and denied in part**.

18         2.     El Paso's claim for response costs of $96,653.76 for Doug Stavinoha's
19   payroll costs from September 1, 2016 to June 30, 2019 is **denied**.

20         3.     El Paso's claim for response costs of $5,826.01 for Doug Stavinoha's payroll
21   costs from July 1, 2019 to August 31, 2019 is **denied**.

22         4.     El Paso's claim for response costs of $4,270.05 for Doug Stavinoha's payroll
23   costs from September 1, 2019 to April 30, 2020 is **granted.**

24         5.     El Paso's claim for response costs of $60,982.76 for Nick Ceto's costs is
25   **granted.**

26

27

28         [8] The United States further notes that a few of Ceto's invoices were marked "not
     reimbursable." Doc. 231 at 6.  El Paso has since clarified that these notations were
     typographical errors.  Doc. 235 at 11.

6.     El Paso's claim for response costs of $2,077.89 for Doug Shoop's costs is **denied.**

7.     The Clerk is directed to enter judgment consistent with this order.

Dated this 22nd day of September, 2021.

David G. Campbell
Senior United States District Judge